# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

B.T., a minor child, by and through his father,
legal guardian, and next friend, G.T.,

       Plaintiff,

vs.                                     No. CIV-05-1165 JB/RLP

SANTA FE PUBLIC SCHOOLS; GLORIA RENDON,
Superintendent of the Santa Fe Public Schools, individually
and in her official capacity; VICKI SEWING, Principal of
Salazar Elementary School, individually and in her official
capacity; ERNEST FRANK DOMINGUEZ, III, individually
and in his official capacity; and the NEW MEXICO PUBLIC
EDUCATION DEPARTMENT; and MICHAEL J. DAVIS,
Superintendent of Public instruction, individually and in his
official capacity; MARILYN SCARGALL, Director of the
Professional Licensure Unit of the NMSBE, individually
and in her official capacity; WILLIE BROWN, attorney
Investigator for the Professional Licensure Unit of the NMSBE,
individually and in his official capacity; TUCUMCARI
MUNICIPAL SCHOOLS; FELIX R. JIMENEZ, Superintendent
of the Tucumcari Municipal Schools, individually and in
his official capacity; and ALLIE PELAYO, as Principal
of Granger Elementary Schools, individually and in her
official capacity, and FRANK ALBETTA,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

     **THIS MATTER** comes before the Court on the Motion to Dismiss Defendants Marilyn

Scargall and Willie Brown, filed April 21, 2006 (Doc. 36)("Motion to Dismiss").  The Court held a

hearing on the motion on August 4, 2006.  The primary issue is whether absolute immunity protects

Defendants Marilyn Scargall and Willie Brown from all claims in this case.  The Court will grant the

motion to dismiss all claims related to Scargall's and Brown's investigation into allegations of sexual

misconduct against Ernest Frank Dominguez III to the extent that the investigation was associated

with Scargall's and Brown's decision not to initiate proceedings to revoke Dominguez' state teaching

license.  Because some of the allegations, however, may state a cause of action arising from

Dominguez' application for a renewed teacher's license, and a request to dismiss those claims is not

before the Court, the Court will deny the motion to the extent that it relates to claims arising out of

the renewal of Dominguez' license.

## FACTUAL BACKGROUND

In September 1998, numerous allegations that Defendant Ernest Dominguez had

inappropriately touched several male students while employed as a teacher at the Granger Elementary

School in Tucumcari, New Mexico were published in a Tucumcari newspaper.  See Memorandum

in Support of Motion to Dismiss Defendants Marilyn Scargall and Willie Brown at 2, filed April 21,

2006 (Doc. 37)("Defendants' Memorandum").  Defendant New Mexico Public Education

Department ("NMPED"), then known as the New Mexico State Board of Education, first learned

of these allegations from a Tucumcari newspaper reporter.  See id.  Plaintiff B.T., a minor, alleges

that the NMPED and various individuals associated with the NMPED violated his federally protected

civil rights because they allegedly failed to conduct a reasonable investigation of the allegations

against Dominguez and revoke his teaching certificate.  See First Amended Complaint at 1-2, filed

February 1, 2006 (Doc. 4)("Complaint").  In addition to this lawsuit, the underlying allegations

against Dominguez also form the basis for another lawsuit in federal court.  See A.D. v. Santa Fe

Public Schools, No. CIV-04-604 JEC/RHS (D.N.M. 2004).

Scargall is the Director of the NMPED's Public Licensure Unit ("PLU").  See Reply in

Support of Motion to Dismiss Defendants Marilyn Scargall and Willie Brown at 1, filed May 30, 2006

(Doc. 47)("Defendants' Reply").  Brown is an attorney-investigator with the PLU.  See Motion to Dismiss at 2.  Upon learning of the allegations against Dominguez, Brown initiated an investigation on behalf of the PLU in accordance with state regulations.  See id.

B.T. represents that Defendant Frank Albetta, counsel for Tucumcari Public Schools ("TPS"), provided Scargall and Brown with explicit and detailed information concerning Dominguez' alleged abusive conduct.  See Plaintiff's Response to Motion to Dismiss by Defendants Scargall and Brown ¶ 1, at 4-5, filed April 6, 2006, filed May 24, 2006 (Doc. 44)("B.T.'s Response").  B.T. contends that Mr. Albetta wrote a three-page, single-spaced letter, stating unequivocally, on TPS' behalf, that he was "reporting the referenced teacher to the Licensure Unit for investigation and possible license revocation for inappropriate touching of students."[1]  Id. ¶ 1, at 5.

In his letter to the PLU investigators, Mr. Albetta noted that the transcripts of interviews regarding Dominguez led him to proceed to a discharge hearing, and to believe "that this matter should also be taken up by the Licensure Unit."  Id. ¶ 3, at 5.  Mr. Albetta represents that, in his experience, the NMPED often wanted others to do their investigatory work for them, and he hoped that his detailed letter would provide the initiative the PLU needed to conduct its own investigation of Dominguez.  See id. ¶ 10, at 8.  Mr. Albetta opined that, "if a thorough investigation was done, [Dominguez] probably would have had his ticket punched . . .  meaning his license revoked."  Id. ¶ 12, at 8-9.  B.T. further contends, however, that, despite his unsatisfactory previous experiences with the NMPED, Mr. Albetta incorrectly assumed that his letter to Scargall would guarantee that

---

[1]B.T. explains that he has not attached exhibits outside of the pleadings in support of his allegations, "because it would be extremely unfair to Plaintiff to convert Defendant's Motion to Dismiss to a Motion for Summary Judgment at this early state of the litigation."  See B.T.'s Response at 4.  B.T. states that, where he has included quotation marks in his briefing, he is quoting from transcripts or documentary evidence, and that all his assertions are made in good faith.  See id.

Dominguez would never again have a teaching license and the opportunity to prey on students.[2] See id. ¶ 10, at 8.

Brown represents that he attempted to obtain investigatory records from TPS' administration and Dominguez, but was prevented from doing so because of a confidentiality agreement the parties reached in accordance with their settlement, and a lack of cooperation from the Tucumcari Police Department and the Quay County District Attorney. See Defendants' Memorandum at 2. B.T. acknowledges that Mr. Albetta was apparently not immediately free to turn over his investigatory file to Brown, but that he directed Brown to the Tucumcari Police and the Quay County District Attorneys -- the sources of all Mr. Albetta's information related to the case. See B.T.'s Response ¶ 2, at 5.

B.T. disputes the NMPED's allegations that the Tucumcari Police and the Quay County District Attorney did not cooperate with its investigation. B.T. contends that the District Attorney's Office was willing to turn over its file, but in accordance with its standard policy, required the NMPED issue a subpoena. See id. ¶ 4, at 5. B.T. also asserts that, under the terms of the confidentiality agreement between Dominguez and TPS, Mr. Albetta was authorized to disclose information to a state agency pursuant to a subpoena. See id. ¶ 5, at 5. Mr. Albetta represents that neither his law firm nor TPS received a request for materials related to the investigation of Dominguez. See id.

_____

[2]B.T. argues that, similar to Scargall and Brown, to the extent that TPS prevented the development or disclosure of investigatory files involving the allegations against Dominguez, it was indifferent to the likely consequences of that cover-up. See B.T.'s Response ¶ 11, at 8. B.T. characterizes the combined effects of TPS' and the NMPED's indifference as "a single conscience shocking 'perfect storm.'" Id. Because B.T. and TPS reached a settlement before the Court's hearing on pending motions, there is no need for discovery on these issues or for the Court to deal with that aspect of the case.

Brown counters that he attempted to subpoena the records, but that he was informed that the PLU had no subpoena power unless and until charges were filed against Dominguez. <u>See</u> Defendants' Memorandum at 2. Brown also contends he made an unsuccessful attempt to obtain records through the New Mexico Attorney General's Office. <u>See id.</u> Finally, Brown states that he contacted a number of the Tucumcari students involved in the allegations against Dominguez. <u>See id.</u> at 2-3. Based on the results of his investigation, Brown concluded that the PLU could not prove that Dominguez had inappropriately touched students and decided not to initiate a license revocation proceeding against Dominguez. <u>See id.</u> at 3.

Brown does not indicate who informed him that he did not have the power to subpoena records before formal charges were filed against Dominguez. <u>See id.</u> at 2. Moreover, B.T. asserts that this conclusion is contrary to New Mexico law, and that the PLU was authorized to issue subpoenas before the commencement of any formal legal action as part of its investigatory function. <u>See</u> B.T.'s Response ¶ 6, at 6. B.T. concludes that the PLU closed its file on Dominguez, leaving him free to continue to perpetrate improper acts against other students. <u>See id.</u> B.T. emphasizes that, in Mr. Albetta's opinion, the PLU could have gotten the necessary records from the Quay County District Attorney's Office. <u>See id.</u> ¶ 10, at 8.

B.T. compares the PLU's investigation to the investigation that Mr. Albetta performed on behalf of TPS. B.T. represents that Mr. Albetta originally delayed discharge proceedings against Dominguez, because he believed it would be easier to obtain the District Attorney's investigatory files after formal charges were filed. <u>See id.</u> ¶ 9, at 7. B.T. distinguishes Mr. Albetta's conduct from that of Brown and Scargall, because, once the District Attorney declined to press charges against Dominguez, Mr. Albetta commenced discharge proceedings "based on the limited but damning

information" in his possession.  Id. ¶ 9, at 7-8.

After being discharged from his position with TPS, Dominguez obtained employment with the Santa Fe Public School District and began teaching at Salazar Elementary School.  See Defendants' Memorandum at 3.  Dominguez allegedly abused B.T. and the plaintiff in A.D. v. Santa Fe Public Schools while employed at Salazar Elementary School.  See id.

In A.D. v. Santa Fe Public Schools, Scargall and Brown sought summary judgment on the grounds that they were entitled to absolute immunity.  See No. CIV-04-604 JEC/RHS, Memorandum Opinion and Order at 2, filed February 9, 2006 (Doc. 118)("Conway Opinion").  Scargall and Brown asserted that the PLU's investigation of Dominguez was associated with a  judicial process -- a revocation hearing -- and that agency officials involved in such a proceeding and who perform certain functions analogous to a prosecutor enjoy absolute immunity.  See id. at 6.

In granting the NMPED defendants summary judgment in A.D. v . Santa Fe Public Schools, the Honorable John E. Conway, Senior United States District Judge for the District of New Mexico, concluded that the investigation that Brown performed was "clearly associated with the judicial process (a revocation hearing) that the PLU is allowed to conduct."  Id.  Judge Conway cited an affidavit that Brown gave, in which he indicated that "the PLU determined not to pursue a license revocation proceeding against Mr. Dominguez because of Mr. Brown's report and the findings therein."  Id.  In light of that evidence, Judge Conway compared A.D.'s allegations against the PLU "to settled Tenth Circuit precedent that state medical board members are entitled to absolute immunity when performing adjudicatory and prosecutorial functions in the exercise of their authority to license physicians and take disciplinary actions against them."  Id. (citing Horowitz v. State Bd. of Med. Exam'rs, 822 F.2d 1508, 1515 (10th Cir. 1987)).  In Judge Conway's view, it was irrelevant

that a formal license revocation hearing never occurred, because "an investigation leading to a formal hearing is still protected by absolute immunity" regardless whether the hearing ever actually takes place.  Conway Opinion at 7.

B.T. asserts that, in addition to the counts arising from violations of his constitutional rights, the allegations that Scargall and Brown failed to maintain and operate safe schools in New Mexico may support state-law claims under the New Mexico Tort Claims Act.  See B.T.'s Response at 4 n.3.  B.T. contends, for example, that Brown's failure to state who discouraged him from issuing a subpoena may be independently actionable, or may further implicate him or Scargall.  See id. ¶ 7, at 7.  B.T. states that, "[i]f necessary," he will move to amend his complaint to add a state tort claim.  See id. at 4 n.3.

## PROCEDURAL BACKGROUND

Scargall and Brown move the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss this action, because B.T.'s First Amended Complaint fails to state a claim against them.  See Motion to Dismiss at 1.  Specifically, Scargall and Brown argue that the Court should dismiss B.T.'s complaint against them, because, with respect to B.T.'s claim under 42 U.S.C. § 1983, they are entitled to absolute immunity as a matter of law.  See Defendants' Memorandum at 4.  Scargall and Brown assert that, because that is the only claim that B.T. has raised against them, they should be dismissed from the case.

Scargall and Brown argue that, in the absence of any conflicting law, the Court must accept Judge Conway's determination that Brown's investigation, and Scargall's actions or omissions related to the investigation, are entitled to immunity as controlling in this case under the doctrine of stare decisis.  See Defendants' Memorandum at 4.

Scargall and Brown report that, because of the nature of this motion, they did not seek opposing counsel's concurrence.  See Motion to Dismiss at 1.  In B.T.'s response, he states that, because Scargall's and Brown's motion grounds its argument solely on stare decisis, he reserves the right to file a surreply should Scargall and Brown argue the underlying merits of an absolute immunity defense in their reply.  See B.T.'s Response at 1.  On May 30, 2006, Scargall and Brown filed a Notice of Completion of Briefing, giving notice of the completion of briefing on their motion to dismiss.  See Notice of Completion of Briefing, filed May 30, 2006 (Doc. 48).

On July 18, 2006, the parties advised the Court that B.T. and all Defendants, with the exception of Scargall and Brown, successfully settled all disputes among them at a mediation on July 14, 2006.  See Letter from Nancy L.  Simmons to the Court at 1 (dated July 18, 2006), filed July 18, 2006 (Doc. 55).  Scargall and Brown declined to participate in the mediation.  See id.

## STANDARDS FOR DECIDING A MOTION TO DISMISS

In considering a motion to dismiss a complaint for failure to state a claim under rule 12(b)(6), a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991).  Where it appears beyond doubt that a plaintiff cannot prove any set of facts that would entitle him to relief, a court may dismiss the cause of action.  See Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## LAW REGARDING STARE DECISIS

The doctrine of stare decisis is a fundamental feature of the American common-law system that requires courts "to abide by, or adhere to, decided cases."  Planned Parenthood of Se. Pa. v.

Casey, 505 U.S. 833, 953 (1992)(Rehnquist, C.J., concurring in part and dissenting in part).  Under the doctrine, lower courts are required to follow the precedential decisions of higher courts on questions of law.  See Hutto v. Davis, 454 U.S. 370, 375 (1982)(stating that lower federal courts must follow a precedent of the Supreme Court of the United States "no matter how misguided the judges of those courts may think it to be").  The United States Court of Appeals for the Tenth Circuit has explained that "precedent . . . includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law."  United States ex rel. King v. Hillcrest Health Ctr., Inc., 264 F.3d 1271, 1279 (10th Cir. 2003)(quoting United States v. Meyers, 200 F.3d 715, 720 (10th Cir. 2000)).

The Supreme Court has emphasized that "[s]tare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."  Payne v. Tennessee, 501 U.S. 808, 827 (1991).  While the Supreme Court has acknowledged that stare decisis is not an "inexorable command,"  it has nevertheless cautioned that, "even in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." Dickerson v. United States, 530 U.S. 428, 443 (2000)(internal quotations omitted).  Accordingly, when a court evaluates a previous holding that it may have the power to overrule or deviate from, "its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." Planned Parenthood of Se. Pa. v. Casey, 505 U.S. at 854. In reaching its decision, the court should consider: (i) whether the rule defies practical workability;

(ii) whether the citizenry has come to rely on the rule to such a degree that its repudiation would lead to a special hardship; or (iii) whether the facts or circumstances that constituted the basis for the application of the rule have so changed as to undermine the rule's justification.  See id. at 854-55.

## LAW REGARDING PROSECUTORIAL IMMUNITY

The Supreme Court has observed that courts are virtually unanimous in holding "that a prosecutor enjoys absolute immunity from [42 U.S.C.] § 1983 suits for damages when he acts within the scope of his prosecutorial duties."  Imbler v. Pachtman, 424 U.S. 409, 420 (1976).  The unanimity is a product of the adversarial system, because without immunity for participants in the judicial process, "[i]t is inevitable that many of those who lose will pin the blame on judges, prosecutors, or witnesses and will bring suit against them in an effort to relitigate the underlying conflict."  Mitchell v. Forsyth, 472 U.S. 511, 521-22 (1985).  The common law's recognition of absolute immunity for prosecutors is rooted in the concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."  Imbler v. Pachtman, 424 U.S. at 423.

A prosecutor is absolutely immune for "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  In addition, it is "well established that this absolute prosecutorial immunity extends to state attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings."  Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489 (10th Cir. 1991).  The scope of prosecutorial immunity, however, is not limitless, and "[a] prosecutor's administrative

duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Id.

The focus is on the prosecutorial function rather than the identity of the prosecutor, because absolute immunity "is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" Kalina v. Fletcher, 522 U.S. 118, 127 (1997)(quoting Malley v. Briggs, 475 U.S. 335, 342 (1986)).  Because qualified immunity is the norm for executive officials, see Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982), the court must draw a line between a prosecutor's administrative functions and his activities as an officer of the court, see Imbler v. Pachtman, 424 U.S. at 431 n.33 (recognizing that "[d]rawing a proper line between these functions may present difficult questions").  In guiding the lower federal courts, the Supreme Court has distinguished between "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." Buckley v. Fitzsimmons, 509 U.S. at 273.

In determining whether a particular function is prosecutorial or administrative, the Tenth Circuit has directed district courts to "focus on a function's proximity to the judicial process, not whether it is discretionary." Scott v. Hern, 216 F.3d 897, 909 n.6 (10th Cir. 2000)(citing Buckley v. Fitzsimmons, 509 U.S. at 269).  See Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d at 1490 ("[T]he more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach.").  Finally, with respect to prosecutorial decisions on matters others refer to them, "there is no question in [the Tenth Circuit] that prosecutors

-11-

are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution." Scott v. Hern, 216 F.3d at 909. While this harsh rule may "leave the genuinely wronged [litigant] . . . without civil redress against a prosecutor whose malicious or dishonest action deprives him" of a fundamental right, the "alternative of qualifying a prosecutor's immunity would disserve the broader public interest." Imbler v. Pachtman, 424 U.S. at 427.

## ANALYSIS

In their written motion, Scargall and Brown contend that, under controlling precedent, the Court should dismiss B.T.'s case on the basis of the doctrine of stare decisis. Scargall and Brown assert that Judge Conway has already decided that they are absolutely immune from B.T.'s 42 U.S.C. § 1983 claims against them,[3] and therefore they must be dismissed from this case. See Defendants' Memorandum at 4. While the Court has carefully considered the opinion in A.D. v. Santa Fe Public Schools in which Judge Conway found Scargall and Brown absolutely immune from suit under 42 U.S.C. § 1983 on the basis of the same allegedly inadequate investigation that B.T. references, that opinion is not binding precedent on the Court. Nevertheless, the Court believes that, at least to the extent that B.T.'s claims relate to Scargall's and Brown's decision not to initiate a license revocation procedure, controlling precedent from the Tenth Circuit does dictate a finding that they have absolute prosecutorial immunity under the circumstances of this case, and will therefore grant their motion to

---

[3]A plaintiff bringing a claim under 42 U.S.C. § 1983 must allege the deprivation of a federally protected right. B.T. brings this case under 42 U.S.C. § 1983 alleging the Defendants violated his Fourteenth Amendment rights to substantive due process and equal protection, and his Fourth Amendment right to be free from unreasonable seizure, and under 42 U.S.C. § 1985 alleging that the Defendants conspired to violate his civil rights under the Fourteenth and Fourth Amendments. See Complaint at 2.

dismiss in part and deny it in part.

## I.   STARE DECISIS DOES NOT REQUIRE THE COURT TO DISMISS B.T.'S CASE.

Scargall and Brown rely heavily upon the doctrine of stare decisis.  Scargall and Brown assert that, "[i]n the absence of any conflicting law, the Court must accept Judge Conway's determination that Brown's investigation and NMPED and Scargall's actions or omissions related to the investigation were entitled to immunity as controlling in this case under the doctrine of stare decisis."  See Defendants' Memorandum at 4.  Scargall's and Brown's understanding of the application of stare decisis is misplaced.  While Judge Conway's prior review of a similar issue will be persuasive, the opinion of another federal district court is not binding on the Court.[4]  Absent the application of some preclusion doctrine like res judicata or collateral estoppel -- neither of which Scargall and Brown allege to be applicable to this case -- B.T. is entitled to litigate his own case, without the automatic and immediate silencing effect of a prior lawsuit against similar defendants.

Different counsel approach a case differently.  B.T. asserts that, because of his counsel's different approach, Judge Conway was not presented with the same record in A.D. v. Santa Fe Public Schools that B.T. plans to construct for the Court in this case.  See B.T.'s Response at 10.

---

[4]B.T. agrees that stare decisis is not applicable to the decisions of other district courts, but also asserts that "even unpublished decisions of the Tenth Circuit are not binding on subsequent courts."  B.T.'s Response at 9.  Tenth Circuit Rule 36.3(B) previously stated: "Citation to an unpublished decision is disfavored.  But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  Effective January 1, 2007, the Tenth Circuit has deleted rule 36.3(B) to comply with rule 32.1(a) of the Federal Rules of Appellate Procedure.  Rule 32.1(a), which the Supreme Court made effective December 1, 2006, prohibits a court from restricting "the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been[:] (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."  Fed. R. App. P. 32.1(a).  Consequently, the Tenth Circuit does not currently have a rule addressing the precedential value of its unpublished decisions.

Specifically, B.T. argues that the plaintiff's counsel in A.D. v. Santa Fe Public Schools did not fashion the pertinent question for the Court -- that is, whether the acts underlying the plaintiff's claims against Scargall and Brown constituted prosecutorial or investigatory conduct.  See id. at 2.

Scargall and Brown also raise a policy argument, and contend that it would be "incongruous" to permit B.T. to pursue his claims raised against Scargall and Brown under 42 U.S.C. § 1983 after Judge Conway granted immunity for the same actions and/or omissions in a parallel case. Defendants' Memorandum at 5.  Scargall and Brown argue that, in the interests of judicial economy and promoting the development of evenhanded and consistent caselaw, the Court should dismiss them from this case.  See id.

The Court does not discount the value of district court opinions addressing similar facts and/or deciding similar legal issues as persuasive authority.  Accordingly, the Court has carefully considered Judge Conway's opinion in A.D. v. Santa Fe Public Schools.  Judge Conway's opinion, however, is not binding precedent on the Court.  The Court has considered Judge Conway's opinion, but has also considered the arguments the parties advance in this case, and conducted its own research of the relevant law in reaching its decision.

## II.     SCARGALL AND BROWN ENJOY ABSOLUTE IMMUNITY FROM B.T.'S CLAIMS UNDER 42 U.S.C. § 1983 TO THE EXTENT THOSE CLAIMS INVOLVE THE PLU'S DECISION NOT TO INVOKE LICENSE REVOCATION PROCEEDINGS AGAINST DOMINGUEZ.

B.T. apparently acknowledges that Scargall and Brown cannot be held liable for the decision not to institute a license revocation hearing.  In his Response, B.T. confines his argument to his allegations that Scargall and Brown failed to investigate properly the allegations of sexual abuse against Dominguez and does not address the PLU's ultimate decision not to initiate a licensing revocation procedure.

-14-

The Court's task is to determine whether the acts underlying B.T.'s claims against Scargall and Brown constituted prosecutorial or investigatory conduct.   The Supreme Court has acknowledged that "[d]rawing a proper line between [administrative and prosecutorial] functions may present a difficult question."  Imbler v. Pachtman, 424 U.S. at 431 n.33.  In some case, however, the investigative functions may be so "intimately associated with the judicial process" that the functions become "necessary so that a prosecutor may fulfill his function as an officer of the court."  Pfeifer v. Hartford Fire Ins. Co., 929 F.2d at 1489-90.  To reach its determination, the Court must measure the proximity between Brown's investigation into the allegations against Dominguez, and his and Scargall's decision not to initiate a license revocation procedure.

B.T.'s response devotes much effort to setting forth additional background facts that suggest the investigation Brown performed into the allegations against Dominguez was inadequate; B.T. contends that, in evaluating a motion to dismiss, the Court must accept these facts as true.  See B.T.'s Response at 4.  Because a motion to dismiss under rule 12(b)(6) is based on a plaintiff's failure to state a claim upon which relief can be granted, however, the Court must accept as true only those facts alleged in the Complaint.  See Sutton v. United Air Lines, 527 U.S. 471, 475 (1999); Jones v. Hunt, 410 F.3d 1221, 1223 (10th Cir. 2005).  Nevertheless, because the additional facts appear to merely amplify what is in the Complaint, and do not change the Court's analysis regarding the proximity between Brown's investigatory action and any license revocation proceeding, the Court will accept B.T.'s additional allegations for purposes of this analysis.

Scargall and Brown do not articulate with precision how their investigation was somehow "intimately associated with" a judicial function or process.  On the other hand, B.T. does not explain what independent significance Brown's investigation -- however inadequate it may have been -- may

-15-

have had apart from assisting the PLU to decide whether to invoke a license revocation procedure. Without a showing to this effect, the Court believes that acts or omissions associated with the investigation were all performed in accordance with Scargall's and Brown's prosecutorial responsibility to determine whether or not the PLU should invoke revocation procedures.

Moreover, at the hearing on this motion, B.T.'s counsel admitted that, if the Court were to find that Brown's investigation was intimately associated with his and Scargall's determination not to invoke a license revocation proceeding, Scargall and Brown would have absolute immunity with regard to their investigatory actions. <u>See</u> Transcript of Hearing at 13:9-18 (Simmons)(taken August 4, 2006)("Transcript").[5] Most important, even if the Court accepts that Mr. Albetta submitted detailed information regarding allegations against Dominguez to Brown, and that Brown did nothing with that information, the Tenth Circuit has repeatedly held that prosecutors are absolutely immune for failing to conduct adequate, independent investigations into matters that are referred to them for prosecution.

In <u>Wilhelm v. Continental Title Co.</u>, 720 F.2d 1173 (10th Cir. 1983), the Tenth Circuit upheld a district court's finding that a state agency official charged with a state-law responsibility to investigate an employment discrimination claim was absolutely immune from suit for failing to pursue the claim. In <u>Wilhelm v. Continental Title Co.</u>, the appellant, Robert Wilhelm, had filed an employment discrimination claim with the Colorado Civil Rights Commission ("CCRC") after being fired from his job one month after revealing to his employer that he had been diagnosed with multiple sclerosis. <u>See id.</u> at 1174. The CCRC determined that there was probable cause for Wilhelm to

---

[5]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

proceed on his claim, but its Director, Dorothy Porter, closed the file on Wilhelm's case because of Wilhelm's failure to engage in conciliation.  See id.

The Tenth Circuit in Wilhelm v. Continental Title Co. adopted the district court's finding that, under Colorado law, Porter was statutorily required to investigate discrimination charges, make probable cause findings, and report to the CCRC when conciliation efforts were unsuccessful.  See id. at 1178.  In light of those obligations, the Tenth Circuit concluded that "the adjudicatory and prosecutorial nature of her responsibilities is clear."  Id.  The Tenth Circuit determined that, with respect to determining how a particular discrimination claim should be proceeded upon, Porter enjoyed absolute immunity.  See id.

The Tenth Circuit reached a similar holding in Pfeiffer v. Hartford Fire Insurance Co., a case in which the plaintiff argued that state officials' investigation into allegations brought to their attention was inadequate.  The appellant in Pfeiffer v. Hartford Fire Insurance Co., Richard Pfeiffer, was a physician who had come to the attention of the Colorado State Board of Medical Examiners ("the Board"), because of his refusal to treat an indigent patient and accusations involving sexual misconduct during the course of patient care.  See 929 F.2d at 1485-86.  After the Board's inquiry panel had conducted an investigation into the accusations, the Board voted to refer the matter to the Colorado Attorney General's office so that a formal complaint could be drafted and disciplinary action could be taken against Pfeiffer.  See id. at 1486.  On appeal, Pfeiffer alleged that the state attorneys involved in drafting the complaint against him violated his civil rights by not performing their own reasonable investigation into the charges against him after the Board referred the case to the Attorney General's office.  See id. at 1490.

In rejecting Pfeiffer's argument, the Tenth Circuit in Pfeiffer v. Hartford Fire Insurance Co.

noted that, while the activities about which Pfeiffer was complaining may have been investigatory in nature, "we and other courts have recognized that absolute immunity may attach even to such administrative or investigative activities 'when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.'" Id. (quoting Snell v. Tunnell, 920 F.2d 673, 693 (10th Cir. 1990)).  The Tenth Circuit affirmed the district court's recognition of absolute immunity in part because there was no evidence "that the individual state attorneys' participation in any investigation of these incidents was unnecessary to their preparation of the case against Pfeiffer." Pfeiffer v. Hartford Fire Ins. Co, 929 F.2d at 1490-91.  Moreover, the Tenth Circuit asserted that "[t]here is no question in this circuit that prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution." Id. at 1490.

More recently, in Scott v. Hern, the Tenth Circuit affirmed its holding in Pfeiffer v. Hartford Fire Insurance Co.  The appellant in Scott v. Hern, Kenneth Scott, was an anti-abortion activist who frequently protested in front of an abortion clinic that the appellee, Warren Hern, operated. See 216 F.3d at 904.  In response to what he perceived as threatening behavior, Hern prepared an affidavit with the assistance of Assistant Boulder County Attorney, C. Jan Rundus, outlining Hern's reasons for his concern. See id.  Among the sources that Hern identified as the basis for the allegations in his affidavit were mental health reports that Hern represented he obtained from unnamed "law enforcement officials," and information a private investigator Hern hired had gathered. Id. at 904-05. Based on this affidavit, Rundus filed a petition in state district court requesting that Scott be taken into custody for a seventy-two hour treatment program and mental health evaluation in accordance with Colorado law. See id. at 905.

Among a number of constitutional claims that Scott brought against various defendants was a claim against Rundus under 42 U.S.C. § 1983 in which Scott alleged, in pertinent part, that Rundus violated his constitutional rights by failing to fully investigate the allegations in Hern's affidavit pertaining to his mental health status in light of her knowledge that an on-going conflict existed between Scott and Hern.  See id. at 908. In affirming the district court's holding that absolute immunity barred Scott's claims against Rundus, the Tenth Circuit in Scott v. Hern quoted its opinion in Pfeiffer v. Hartford Fire Insurance Co., and noted that absolute immunity may attach to investigative activities "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." Scott v. Hern, 216 F.3d at 908 (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d at 1490).  The Tenth Circuit in Scott v. Hern reiterated its earlier holding that "prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution," Scott v. Hern, 216 F.3d at 909 (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d at 1490), and held that Rundus' "immunized conduct includes her investigation, or lack thereof." Scott v. Hern, 216 F.3d at 909.

Although B.T. attempts to separate Brown's investigation from his and Scargall's decision not to institute a license revocation proceeding, this attempt fails to account for the Tenth Circuit's emphasis on the proximity between investigatory acts and judicial proceedings, and does not fully account for the Tenth Circuit's repeated acknowledgment that absolute immunity may attach "to actions 'that are primarily investigative or administrative in nature,' . . . 'when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.'" Scott v. Hern, 216 F.3d at 908 (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d at 1490).  Like the prosecutorial defendants in Wilhelm v. Continental Title Co., Pfeiffer v. Hartford Fire Insurance Co., and Scott v.

<u>Hern</u>, state law required Scargall and Brown to conduct an investigation into the allegations against Dominguez in association with a potential judicial proceeding that they had the authority, but not the obligation, to invoke.  For the purposes of the motion before the Court, it is irrelevant that Scargall and Brown may not have performed an adequate investigation, or that, if a thorough investigation was performed, Dominguez "would have had his ticket punched."  In the Tenth Circuit, prosecutors have absolute immunity against allegations that they failed to conduct an adequate, independent investigation into matters referred to them for prosecution.

B.T. maintains that Mr. Albetta had provided the PLU a detailed explanation of the allegations against Dominguez,  indicated his good faith belief in the allegations, and alerted PLU employees that Dominguez had been terminated from his employment with TPS. <u>See</u> B.T.'s Response ¶ 8, at 7.  B.T. asserts that Scargall and Brown were responsible for investigating whether Dominguez should be a licensed educator of young children, and "that they turned their backs on these children out of laziness and deliberate indifference, or even out of gender based bias that the charge of molestation of young boys was not worth the resources to continue the investigation."  <u>Id.</u> ¶ 7, at 7.

The problem with B.T.'s argument is that, even if all the allegations that he raises in his complaint and all additional information he proffers in his response to this motion are true, to the extent that Brown's investigation was related to his and Scargall's decision not to initiate a license revocation proceeding, Scargall and Brown enjoy absolute immunity.  Moreover, while the Court is cognizant that this reality leaves B.T. without civil redress against prosecutorial defendants whose potentially malicious or dishonest actions have deprived him of a constitutionally protected right, the Supreme Court has weighed the magnitude of this consequence against the policy underlying absolute prosecutorial immunity, and concluded "the alternative of qualifying a prosecutor's immunity would

-20-

disserve the broader public interest." Imbler v. Pachtman, 424 U.S. at 427.  The Supreme Court has emphasized that absolute civil immunity is necessary to ensure "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." Id. at 427-28.

**III.   THE COURT WILL NOT DISMISS B.T.'S CLAIMS UNDER 42 U.S.C. § 1983 TO THE EXTENT THOSE CLAIMS INVOLVE SCARGALL'S AND BROWN'S RESPONSIBILITY FOR THE NMPED'S ISSUANCE OF A RENEWED TEACHER'S LICENSE TO DOMINGUEZ.**

At the hearing on this motion, B.T.'s counsel asserted that, even if the Court were to grant Scargall's and Brown's motion, the scope of the motion is not broad enough to encompass dismissal of all B.T.'s claims against Scargall and Brown.  B.T. argues that, while absolute prosecutorial immunity might bar claims against Scargall and Brown to the extent that they failed to initiate license revocation procedures against Dominguez based on the PLU's inadequate investigation, to the extent that any inadequate investigatory activities can be associated with the PLU's issuance of a renewal teaching license to Dominguez when he applied for employment with the Santa Fe Public Schools, the issue of absolute immunity is not before the Court.  See Transcript at 12:18-20 (Simmons).  B.T. further contends that, if the Court construes Scargall's and Brown's motion to make the argument that absolute immunity protects activities associated with the license renewal, the Court should hold that they are not entitled to absolute immunity with respect to the issuance of a renewal license to Dominguez, because the connection between the investigation into allegations against Dominguez and any judicial process is too remote.  See id. at 12:21-23 (Simmons).  B.T. argues that there is nothing prosecutorial about the issuance of licenses and that determining whether an applicant's license application is valid is a ministerial function.  See id. at 12:23-13:1 (Simmons).

Scargall's and Brown's counsel conceded at the motion hearing that whether the Defendants

seek absolute immunity in association with any claims that might arise from Dominguez' application for a renewed teacher's license was not argued in their briefing.  See id. at 25:20-21 (Hamilton). Scargall and Brown contend that, to the extent that B.T. wishes to raise a cause of action for inadequate investigation in association with Dominguez' application for a renewed teacher's license, he has not properly pled that cause of action.  See id. at 30:22-31:4.

There is some basis in the First Amended Complaint for B.T.'s argument that he also seeks damages for Scargall's and Brown's actions and omissions associated with the issuance of a renewal teaching license.  See Complaint ¶¶ 52-62, at 11-12.  The First Amended Complaint indicates that Dominguez' state teaching license expired in June 2000, see id. ¶ 52, at 11, and appears to argue that Dominguez was able to obtain a renewal license because Scargall and Brown "failed to conduct a background investigation of Dominguez in connection with his application for another teaching license and failed to follow up and complete an investigation into the reported sexual abuse of students by Dominguez at [TPS]," id. ¶ 54, at 11.  On the other hand, these could be read, and the Court so did before the hearing, to be merely factual allegations supporting B.T.'s claims associated with the revocation hearing and not a separate claim.  Nevertheless, the Court is reluctant to dismiss B.T.'s entire First Amended Complaint on the grounds of absolute prosecutorial immunity with these paragraphs in the pleading.

Moreover, the Court does not believe that Scargall's and Brown's motion for dismissal sweeps broader than dismissal on claims related to the PLU's decision not to invoke a license revocation proceeding.  The Court will grant the motion to the extent it requests dismissal on those claims, because Scargall and Brown enjoy absolute immunity from them.  The Court will not decide at this time, however, whether Scargall and Brown enjoy any immunity with respect to any claims that

might arise from Dominguez' application for a renewal teaching license.  The parties' briefing did not address that issue -- the cause of action for improper renewal of Dominguez' license -- and the issue is not before the Court at this time.  If B.T. wishes to proceed on this latter theory, he may wish to amend his complaint to more clearly state his theory.

**IT IS ORDERED** that the Motion to Dismiss Defendants Marilyn Scargall and Willie Brown is granted in part and denied in part.  Absolute prosecutorial immunity bars claims against Scargall and Brown to the extent that they failed to initiate license revocation procedures against Dominguez based on the PLU's allegedly inadequate investigation.  To the extent that Scargall's and Brown's motion can be construed to seek absolute immunity in association with any claims that might arise from Dominguez' application for a renewal teaching license, that issue is not before the Court and the Court will deny the motion to that extent.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Sylvia F. LaMar
Debra D. Poulin
Santa Fe, New Mexico

-- and --

George T. Geran
Santa Fe, New Mexico

-- and --

Nancy L. Simmons
The Law Offices of Nancy L. Simmons, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Stephen G. French
Robyn B. Hoffman
French & Associates, PC
Albuquerque, New Mexico

 *Attorneys for Defendants Santa Fe Public Schools,*
  *Gloria Rendon, and Cynthia Sanchez*

John S. Stiff
John S. Stiff & Associates, L.L.C.
Albuquerque, New Mexico

 *Attorneys for Defendant Vicki Sewing*

Kevin M.. Brown
Brown & German
Albuquerque, New Mexico

 *Attorneys for Defendant Ernest Frank Dominguez, III*

Stephen S. Hamilton
Emma R. Brittain
Montgomery & Andrews, P.A.
Santa Fe, New Mexico

 *Attorneys for Defendants New Mexico Public Education Department,*
  *Michael J. Davis; Willie Brown, and Marilyn Scargall*

Nancy E. Nickerson
Coppler & Mannick, P.C.
Santa Fe, New Mexico

 *Attorneys for Defendants Tucumcari Municipal Schools,*
  *Felix R. Jimenez, and Allie Pelayo*

Gregory L. Biehler
Beall & Biehler
Albuquerque, New Mexico

*Attorneys for Defendant Frank Albetta*