## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

B.T., a minor child, by and through his father,
legal guardian, and next friend, G.T.,

      Plaintiff,

vs.                                     No. CIV-05-1165 JB/RLP

MICHAEL J. DAVIS, in his individual capacity,
MARILYN SCARGALL, in her individual capacity,
WILLIE BROWN, in his individual capacity, and
JOHN DOES I-V,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for Summary Judgment Based on

Qualified Immunity, filed April 17, 2007 (Doc. 86).  The primary issue is whether the Court should

grant Defendants Michael Davis, Marilyn Scargall, and Willie Brown summary judgment because

qualified immunity bars the remaining claims against them.  Because the Court concludes that

Plaintiff B.T., a minor child, has not established genuine issues of material fact regarding whether

the Defendants' actions violated his constitutional rights or that clearly established law put the

Defendants on notice that their conduct constituted a violation of his constitutional rights, the Court

will grant the Defendants' motion and dismiss B.T.'s claims.

### FACTUAL BACKGROUND

During the time period between 1998 and 2000, Davis was the Superintendent of Public

Instruction in the New Mexico State Department of Education ("SDE").  See Memorandum Brief

in Support of Motion for Summary Judgment Based on Qualified Immunity, filed April 17, 2007

(Doc. 87)("Defendants' Memorandum"), Exhibit A, Affidavit of Willie R. Brown in Support of

Defendants' Motion for Summary Judgment ¶ 2, at 1 ("Brown Affidavit"); Plaintiffs' Response to Defendants' Motion for Summary Judgment Based on Qualified Immunity Filed April 17, 2007, Docket No. 86 ¶ 3, at 5, filed May 22, 2007 (Doc. 96)("B.T.'s Response"). Scargall was the Director of the SDE's Professional Licensure Unit ("PLU") during this time. See Brown Affidavit ¶ 2, at 1; B.T.'s Response ¶ 1, at 5. Brown was the Senior Attorney for the PLU. See Brown Affidavit ¶ 2, at 1; B.T.'s Response ¶ 2, at 5.

From September 1998 through March 1999, Brown conducted an investigation into allegations that Defendant Ernest Dominguez had inappropriately touched several male students while employed as a teacher at the Granger Elementary School ("Granger") in Tucumcari, New Mexico.[1] See Brown Affidavit ¶¶ 3-4, at 1-2; B.T.'s Response ¶¶ 4-5, at 5. At the conclusion of his investigation, Brown prepared a report in the form of a Memorandum to File. See Brown Affidavit, Exhibit 1, Report of Investigation ("Brown's Report"); B.T.'s Response ¶¶ 6, 8, at 5-6. In Brown's eleven-page, single-spaced report, he detailed the allegations against Dominguez and his investigation of these allegations, including challenges he faced getting documents and information from Tucumcari officials and the local District Attorney's Office. In the conclusion to this report, Brown explained that, "[w]hile such allegations . . . are plausible and generate immediate concern for students' safey [sic], the inability to corroborate any allegation coupled with the numerous contradictions have made it difficult to formulate a case sufficient to support licensure charges against Ernest Dominguez." Brown's Report at 10. Brown concluded that, "[i]f Ernest

---

[1] The Court has previously detailed the factual background related to Brown's investigation of the allegations against Dominguez. See Memorandum Opinion and Order at 2-7, filed March 12, 2007 (Doc. 80). The Court will confine its recitation of the facts in this opinion to those facts pertinent to the resolution of this motion.

Dominguez did in fact inappropriately touch boys while employed as a teacher in Tucumcari Schools, this office is unable to currently make that assertion or to prove it by a preponderance of the evidence." Id. at 11.

In November 1998, Dominguez resigned from his position at Granger pursuant to a settlement that contained a confidentiality agreement between himself and Tucumcari Public Schools ("TPS").  See id. at 3; B.T.'s Response ¶ 9, at 6.  After resigning from his position with TPS, Dominguez obtained employment with the Santa Fe Public School District and began teaching at Salazar Elementary School ("Salazar") in the fall of 1999.  See Defendants' Memorandum ¶ 10, at 3; B.T.'s Response ¶ 10, at 6.

Dominguez' state-issued teaching license expired in June 2000.  See Brown Affidavit ¶ 10, at 2.  In a sworn application for renewal of his teaching license, dated June 7, 2000, Dominguez stated that he had not "ever resigned, entered into a settlement agreement, or otherwise left employment as a result of alleged misconduct."  B.T.'s Response, Exhibit 9, Application for Continuing Licensure, Question 4 at 2 ("Renewal Application").  At the time, it was standard procedure in the PLU to assume the veracity of an applicant's sworn statements.  See Brown Affidavit ¶ 12, at 3; B.T.'s Response ¶ 13, at 7.  Renewal applications were only submitted for further investigation when an applicant indicated that he had  a history of disciplinary proceedings, criminal convictions, had entered into a settlement agreement, or had engaged in some other behavior that might make licensing inappropriate. See Brown Affidavit ¶ 13, at 3; B.T.'s Response ¶ 13, at 7.  The PLU renewed Dominguez' teaching license based on the June 7, 2000 application. See Brown Affidavit ¶ 17, at 3; B.T.'s Response ¶ 14, at 7.

 Dominguez continued to teach at Salazar through the fall of 2003.  See Defendants'

Memorandum ¶ 17, at 4; B.T.'s Response ¶ 17, at 8.  The alleged injuries that constitute the basis of this lawsuit involve allegations that Dominguez inappropriately touched B.T. in 2001 through 2003 while B.T. was a student at Salazar.  See Defendants' Memorandum ¶ 20, at 5; B.T.'s Response ¶ 20, at 8.

### PROCEDURAL BACKGROUND

B.T. filed the original Complaint in this action on November 4, 2005, naming, among others, Davis, Scargall, and Brown as Defendants.  See Complaint for Civil Rights Violations, Negligence, Sexual Assault, Harassment, Negligent Misrepresentation, Hiring and Retention, Tort Claims, and for Monetary Damages and other Affirmative Relief, filed November 4, 2005 (Doc. 1).  B.T. filed his First Amended Complaint on February 1, 2006, again naming Davis, Scargall, and Brown.  See First Amended Complaint, filed February 1, 2006 (Doc. 4).  On March 21, 2006, B.T. voluntarily dismissed Davis from the case pursuant to rule 41(a) of the Federal Rules of Civil Procedure without having served him with either the original or the First Amended Complaint.  See Notice of Voluntary Dismissal Without Prejudice of Michael J. Davis, filed March 21, 2006 (Doc. 23).  B.T. represents that, since that date, he has obtained additional information, including copies of correspondence from Davis, indicating that Davis participated in the decision to grant or renew Dominguez' New Mexico state teaching license.  See Plaintiff's Motion for Leave to File Second Amend[ed] Complaint ¶ 4, at 2, filed August 22, 2006 (Doc. 65)("Motion to Amend").

Brown and Scargall moved to dismiss the First Amended Complaint on April 21, 2006.  See Motion to Dismiss Defendants Marilyn Scargall and Willie Brown, filed April 21, 2006 (Doc. 36).  On July 18, 2006, the parties advised the Court that B.T. and all Defendants, with the exception of Scargall and Brown, successfully settled all disputes among them at a mediation on July 14, 2006.

See Letter from Nancy L. Simmons to the Court at 1 (dated July 18, 2006), filed July 18, 2006 (Doc. 55).  Scargall and Brown declined to participate in the mediation.  See id.

The Court held a hearing on Scargall's and Brown's motion to dismiss on August 4, 2006. See Clerk's Minutes, filed August 22, 2006 (Doc. 66).  At that hearing, B.T.'s counsel argued that prosecutorial immunity, which the Defendants contended applied to Brown's investigation of the charges against Dominguez, did not apply to the PLU's decision in 2000 to renew Dominguez' teaching license.  See Transcript of Hearing at 20:1-18 (Simmons)(taken August 4, 2006)("Aug. 4, 2006 Transcript").[2]  The Court, in response to what it perceived as a new argument to salvage B.T.'s case, indicated, and B.T.'s counsel agreed, that B.T. might wish to amend his Complaint to state more clearly his theory regarding allegations that the Defendants wrongfully granted or renewed Dominguez' teaching license in 2000.  See Motion to Amend ¶ 2, at 2; Aug. 4, 2006 Transcript at 32:2-4 (Court).

On March 12, 2007, the Court filed its Memorandum Opinion and Order granting Scargall's and Brown's motion to dismiss in part and denying the motion in part.  See Memorandum Opinion and Order, filed March 12, 2007 (Doc. 80).  In its March 12, 2007 opinion, the Court dismissed B.T.'s claims against Scargall and Brown to the extent that they failed to initiate license revocation procedures against Dominguez based on the PLU's allegedly inadequate investigation into the charges involving his conduct at Granger, because absolute prosecutorial immunity bars those claims.  See id. at 23.  The Court also reiterated that, to the extent that B.T.'s claims arise from Dominguez' application for a renewed teacher's license, B.T. may wish to amend his complaint to

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

clarify his theory.  See id.

B.T. filed his Second Amended Complaint on March 14, 2007.  See Second Amended Complaint, filed March 14, 2007 (Doc. 82)("Complaint").  B.T.'s Complaint names Davis, Scargall, Brown, and John Does I-V as Defendants.  See id. at 1.  B.T. states that, upon information and belief, John Does I through V are SDE employees who were involved in the decision to "grant Dominguez a [teaching] license or to renew his license, without either addressing the misleading statements in his application and/or prior allegations of child molestation, or revealing to prospective school district employers that Dominguez had previously been alleged to be a child molester."  Id. ¶ 7, at 3.  B.T.'s Complaint asserts a cause of action under 42 U.S.C. § 1983 for violations of his rights to substantive due process and equal protection.  See Complaint at 12-14.

The Defendants filed their motion for summary judgment on B.T.'s remaining claims against them on April 17, 2007.  The Defendants request the Court enter summary judgment on their behalf on the ground that qualified immunity bars B.T.'s remaining claims.

At the same time they filed their motion for summary judgement, the Defendants filed a motion to stay discovery pending the Court's ruling on their qualified immunity defense.  See Motion to Stay Discovery Pending Resolution of Qualified Immunity Defense, filed April 17, 2007 (Doc. 88).  The Court granted the Defendants' motion to stay discovery on July 3, 2007, but noted that, should B.T. believe that some discovery is necessary for the Court to determine whether qualified immunity was applicable, he could file an affidavit under rule 56(f) of the Federal Rules of Civil Procedure.  See Stipulated Order Granting Stay of Discovery at 1, filed July 3, 2007 (Doc. 104).

B.T.'s counsel attached a rule 56(f) affidavit to B.T.'s Response to the Defendants' Motion

for Summary Judgment.  See B.T.'s Response, Exhibit 1, Rule 56(F) Affidavit of Nancy L. Simmons ("Simmons Affidavit").  In her affidavit, B.T.'s counsel indicates that, among other subjects, she needs to conduct discovery to determine: (I) each of the Defendant's awareness of the allegations against Dominguez and their familiarity with Brown's Memorandum summarizing his investigation, see id. ¶¶ 3, 5-8, at 1-2; (ii) the extent to which each of the Defendants was aware of, and involved in, the processing of Dominguez' application for a renewed license, see id. ¶¶ 7-8, 11, at 2-3; (iii) the role each Defendant had in establishing and implementing the rule that the veracity of applicants' statements would be accepted as stated, see id. ¶ 8, at 2; (iv) the identities of John Does I through V, their knowledge of allegations against Dominguez, and the extent of their participation in processing his renewal application, see id. ¶ 9, at 2; and (v) whether any of the Defendants have historically treated allegations of sexual molestation against boys as less serious than those involving female victims, see id. ¶ 14, at 3.  The Defendants oppose B.T.'s request for additional discovery on the grounds that the additional discovery B.T. requests is not pertinent to determining whether any of the Defendants are entitled to qualified immunity.  See Reply in Support of Defendants' Motion for Summary Judgment Based on Qualified Immunity (Doc. #86), filed July 2, 2007 (Doc. 102)("Defendants' Reply").

## STANDARD FOR DECIDING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth

specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted).  Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  Id. (citations and internal quotations omitted).

The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway

v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).

When evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000).  Moreover, the court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)).  Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must establish: (I) that the defendant violated a constitutional right; and (ii) that the constitutional right violated was clearly established.  See Cortez v. McCauley, 438 F.3d 980, 988 (10th Cir. 2006).  "If the plaintiff fails to carry either part of [the] two part burden, the defendant is entitled to qualified immunity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995).  The second part of the plaintiff's burden "must be undertaken in light of the specific context of the case, not as a broad

proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). Finally, in determining whether a defendant is entitled to qualified immunity, a court cannot assume that a constitutional violation exists; rather, a court must consider the constitutional violation issue before taking up the clearly established issue. See Kirkland v. St. Vrain Valley School Dist. No. RE-1J, 464 F.3d 1182, 1188-89 (10th Cir. 2006).

In evaluating whether a qualified immunity defense is applicable, the Court will view the evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). "Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful." Cortez v. McCauley, 438 F.3d at 988. If the plaintiff establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must demonstrate that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. See id. If there is a factual dispute involving an issue on which qualified immunity turns, summary judgment based on a qualified immunity defense in a 42 U.S.C. § 1983 action is inappropriate. See Archer v. Sanchez, 933 F.2d 1526, 1533 n.1 (10th Cir. 1991).

Finally, the court must be mindful that qualified immunity "protects public officials not only

-10-

from liability, but from the burdens of discovery and litigation as well." DiCesare v. Stuart, 12 F.3d

973, 979 (10th Cir. 1993)(citing Harlow v. Fitzgerald, 457 U.S. at 817-18).

> Discovery should not be allowed until the court resolves the threshold question
> whether the law was clearly established at the time the allegedly unlawful action
> occurred.  The question is purely legal, and a court cannot avoid answering the
> question by framing it as factual.  The court must first determine whether the actions
> defendants allegedly took are actions that a reasonable person could have believed
> lawful.  If the actions are those that a reasonable person could have believed were
> lawful, defendants are entitled to dismissal before discovery.  If the actions are not
> those that a reasonable person could have believed were lawful, then discovery may
> be necessary before a motion for summary judgment on qualified immunity grounds
> can be resolved.  However, any such discovery must be tailored specifically to the
> immunity question.

Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992)(internal citations and quotation omitted).

In sum, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."

DiCesare v. Stuart, 12 F.3d at 979 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).

## LAW REGARDING 42 U.S.C. § 1983 ACTIONS

In enacting 42 U.S.C. § 1983, Congress has created a federal cause of action for individuals

who have been deprived of federally protected rights "under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia."  42 U.S.C. §

1983.  Numerous federal courts have noted that a plaintiff may not bring a cause of action against

state officials directly under the Constitution, because 42 U.S.C. § 1983 is the exclusive federal

remedy against persons acting under color of state law.  See Burns-Toole v. Byrne, 11 F.3d 1270,

1273 n.3 (5th Cir. 1994); Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir.

1992); May v. Hackett, 863 F.2d 883, 883 (6th Cir. 1988).  To state a claim under 42 U.S.C. § 1983,

a plaintiff must allege facts demonstrating two elements: (I) the plaintiff was deprived of a right that

federal law protects; and (ii) the defendant who deprived him of his right did so under color of state

-11-

law.  See Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988)(quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of [42 U.S.C.] § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)(quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

Under "[42 U.S.C.] § 1983, government officials are not vicariously liable for the misconduct of their subordinates."  Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006).  "In order for liability to arise under [42 U.S.C.] § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."  Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006).  See Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996)("[P]ersonal participation is an essential allegation in a [42 U.S.C.] § 1983 claim.").  Because "liability under [42 U.S.C. §] 1983 must be predicated upon a 'deliberate deprivation of constitutional rights by a defendant,'"  Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1043 (10th Cir. 1993), a plaintiff must establish an affirmative link between the Defendants' conduct and the alleged constitutional violations of their subordinates by alleging the Defendants' direct participation, their exercise of control or direction, or their failure to supervise.  Serna v. Colo. Dep't of Corr., 455 F.3d at 1152.

## LAW REGARDING EQUAL PROTECTION

"The equal protection clause is triggered when the government treats someone differently than another who is similarly situated."  Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d 853, 859 (10th Cir. 1991)(citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  The United States Court of Appeals for the Tenth Circuit has recognized that

"[s]exual harassment by a public official or employee can violate the Fourteenth Amendment right to equal protection of the laws thus triggering a [42 U.S.C.] § 1983 cause of action."  Maestas v. Lujan, 351 F.3d 1001, 1009 (10th Cir. 2003)(quoting Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996))(internal alterations omitted).

To succeed on an equal protection claim, a plaintiff must demonstrate that discriminatory intent motivated the state action to which he objects.  See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003); Maxey v. Banks, 26 Fed. Appx. 805, 808 (10th Cir. 2001); Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1217 n.16 (D.N.M. 2004)(Browning, J.)(identifying discriminatory intent as an element of an equal protection claim).  The Tenth Circuit has described it as "hornbook constitutional law that mere negligence or mistake resulting in uneven application of the law is not an equal protection violation."  Roe v. Keady, 329 F.3d 1188, 1191-92 (10th Cir. 2003).  While "[i]t is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes," the plaintiff must "prove that a discriminatory purpose was a motivating factor."  Sauers v. Salt Lake County, 1 F.3d 1122, 1130 (10th Cir. 1993)(quoting Watson v. City of Kan. City, 857 F.2d 690, 694 (10th Cir. 1988)).

## LAW REGARDING SUBSTANTIVE DUE PROCESS

"The touchstone of due process is protection of the individual against arbitrary action of government . . . whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  Graves v. Thomas, 450 F.3d 1215, 1220 (10th Cir. 2006)(quoting County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)).  Because "only the most egregious conduct can be said to be 'arbitrary in the constitutional sense,'" County of Sacramento v. Lewis, 523 U.S. at 846 (quoting

-13-

Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992)), the Supreme Court has been reluctant to expand the doctrine of substantive due process, and has cautioned that "[o]nly fundamental rights and liberties which are 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty' qualify for such protection," Chavez v. Martinez, 538 U.S. 760, 775 (2003)(quoting Washington v. Glucksberg, 521 U.S. 702, 721 (1997)).  See Graves v. Thomas, 450 F.3d at 1220 ("Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution.")(quoting Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998)).

"The 'ultimate standard' for assessing an alleged violation of substantive due process is 'whether the challenged government action shocks the conscience of federal judges.'"  Ward v. Anderson, No. 06-8014, 2007 U.S. App. LEXIS 17531, at *23 (10th Cir. July 24, 2007)(quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)).  To succeed on a substantive due process claim, a "plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1223 (10th Cir. 2006)(quoting Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995)).  More specifically, "a [42 U.S.C.] § 1983 violation based on substantive due process 'must be predicated on a state action manifesting one of two traditional forms of wrongful intent -- that is, either (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm."  Ward v. Anderson, 2007 U.S. App. LEXIS 17531, at *26 (quoting Uhlrig v. Harder, 64 F.3d at 573).  In determining whether a defendant's actions shock the conscience, three principles guide the Court's analysis: (I) the need for restraint in defining the scope of substantive due process; (ii) the recognition that 42 U.S.C. § 1983 should not be used to replace state tort law; and (iii) the propriety of deferring  to

local policymakers' decisions regarding public safety.  See Valdez v. New Mexico, 109 Fed. Appx. 257, 262 (10th Cir. 2004).

While the Fourteenth Amendment prohibits states from depriving individuals of life, liberty, or property without due process, "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989).  "As a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  Id. at 197.  The Tenth Circuit has interpreted the Supreme Court's holding in DeShaney v. Winnebago County Dep't of Soc. Servs. to contain two exceptions to the general rule that state actors are not liable for the acts of third parties: (I) the "special relationship doctrine"; and (ii) the "'danger creation' theory."  Uhlrig v. Harder, 64 F.3d at 572.

A special relationship "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual."  Johnson v. Holmes, 455 F.3d 1133, 1143 (10th Cir. 2006).  The special relationship doctrine is implicated when the State impairs an individual's ability to act on his own behalf, e.g., "through incarceration, institutionalization, or other similar restraint of personal liberty."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 200.  See Uhlrig v. Harder, 64 F.3d at 572.  To prevail under the special relationship doctrine, "a plaintiff must show involuntary restraint by the government official in order to establish a duty to protect under the special relationship theory."  Armijo ex. rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d 1253,1261 (10th Cir. 1998).

"Under the danger creation theory, state officials can be liable for the acts of third parties

where those officials 'created the danger' that caused the harm." Marino v. Mayger, 118 Fed. Appx.

393, 401 (10th Cir. 2004)(quoting Armijo ex. rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d at

1262).

> To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

Christiansen v. City of Tulsa, 332 F.3d 1270, 1281 (10th Cir. 2003)(quoting Gonzales v. City of

Castle Rock, 307 F.3d 1258, 1263 (10th Cir. 2002)).  The Tenth Circuit has characterized the danger

creation theory as a "narrow exception" that "applies only when a state actor 'affirmatively acts to

create, or increases a plaintiff's vulnerability to, danger from private violence.'" Moore v. Guthrie,

438 F.3d at 1042 (quoting Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)).  Moreover, the

danger creation theory "does not apply when the injury occurs due to the action of another state

actor." Moore v. Guthrie, 438 F.3d at 1042.

## ANALYSIS

The Court has already determined that the Defendants are entitled to prosecutorial immunity

with respect to B.T.'s claims that derive from the alleged inadequacy of Brown's investigation into

the allegations against Dominguez involving students in Tucumcari and the PLU's decision not to

revoke Dominguez' license at that time.  Subsequent to that ruling, B.T. amended his Complaint in

an effort to avoid having his entire cause of action dismissed.  B.T.'s Complaint, however, and his

counsel's argument in the briefing on this motion, still contain a number of references to the alleged

inadequacy of Brown's investigation.   While the Court has carefully reviewed all of B.T.'s

-16-

pleadings, it must be careful to limit its analysis to the narrow issue that remains to be decided --

whether the Defendants' renewal of Dominguez' teaching license in June 2000, one school-year

after he began work for the Santa Fe Public Schools, constitutes a violation of B.T.'s constitutional

rights.

To survive a motion for summary judgment based on qualified immunity, B.T. must establish

that the Defendants violated his constitutional rights and that, at the time the Defendants acted to

violate his rights, the law was clearly established that their actions would violate his rights.  Because

the Court finds that B.T. has not presented evidence that, viewed in the light most favorable to him,

establishes a violation of equal protection or substantive due process, and because the Court believes

that clearly established law did not put the Defendants on notice that their conduct violated B.T.'s

constitutional rights, the Court finds that the Defendants are entitled to qualified immunity.[3]

## I.    B.T. HAS NOT DEMONSTRATED THAT THE DEFENDANTS DENIED HIM EQUAL PROTECTION.

B.T. does not assert that any of the Defendants sexually abused him.  See B.T.'s Response

at 15.  Rather, he asserts that his equal protection claim contains two aspects: (I) that the Defendants

"acquiesced in and condoned Dominguez' sexual harassment," id. at 14; and (ii) that "there is

_____

[3]The Court finds summary judgment appropriate in favor of all Defendants, including the John Doe Defendants.  B.T. describes the John Doe  Defendants as those SDE employees involved in the decision to "grant Dominguez a [teaching] license or to renew his license, without either addressing the misleading statements in his application and/or prior allegations of child molestation, or revealing to prospective school district employers that Dominguez had previously been alleged to be a child molester."  Complaint ¶ 7, at 3.  Because B.T. does not characterize the John Does' actions as inconsistent with any of the actions of the named defendants, the Court may include these defendants in the summary judgment order.  See Roper v. Grayson, 81 F.3d 124, 126 (10th Cir. 1996)(finding it appropriate to include John Doe defendants along with the named defendants in summary judgment dismissal when the identities of such defendants were adequately described and, based on the acts of such defendants, they would have been entitled to summary judgment as well).

-17-

evidence in the record that [Brown] harbored discriminatory animus towards boys in [B.T.'s] age group," id. at 3.   B.T. argues that the "Defendants were obliged to protect [him] from sexual harassment, and deliberately failed to use any of the arsenal of incentives and sanctions to stop a state actor from sexually harassing the boys in his classroom."   Id. at 15 (internal quotations omitted).

The parties do not dispute that sexual harassment is actionable as an equal protection violation.   Equal protection is implicated "when the government treats someone differently than another who is similarly situated."   Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d at 859.   To succeed on his equal protection claim, B.T. must demonstrate that the Defendants "singled out [B.T.] for disparate treatment and selected this course of action at least in part for the purpose of causing its adverse effects."   Roe v. Keady, 329 F.3d at 1192 (quoting Nabozny v. Podlesny, 92 F.3d 446, 454 (7th Cir. 1996))(emphasis in original).   In this case, B.T. suggests that the Defendants' alleged actions denied young boys enrolled in Dominguez' classes the protections afforded to female students and similarly situated male students enrolled in other schools.   See B.T.'s Response at 14-16.

While B.T. has stated in his briefing that "there is a reasonable inference . . . whether Defendant Brown was motivated by discriminatory animus in failing to protect boys in [B.T.'s] circumstances, as well as whether Defendants Davis and Scargall condoned his discrimination," id. at 14, he has not alleged, or presented any evidence, that the Defendants classified students by gender -- or any other protected class -- or that they only declined to investigate allegations of abuse against male students.   He has not presented any specific evidence that any of the Defendants intended to discriminate against boys in the Santa Fe school district.   While the Court understands

that intent is most often proved by circumstantial evidence, B.T. has not referenced any conduct, statements, or correspondence that suggests any of the Defendants had a discriminatory animus. B.T. has not presented evidence, or even alleged, that the Defendants' policy to accept the veracity of license-applicant's statements as true placed male students more at risk than female students, or resulted in a disparate impact among other definable groups of students.  To the extent that the Defendants' alleged indifference to Dominguez' untruthful application disproportionately affected a specific population of male students, B.T. has not presented any evidence -- direct or circumstantial -- that any of the Defendants intended that effect.  Cf. Woods v. Nuemeyer, No. 95-1097, 1996 U.S. App. LEXIS 2407, at * 7 (10th Cir. Feb. 16, 1996)(affirming district court's grant of summary judgment in an equal protection claim based on race when the record included no evidence of discriminatory intent -- such as slurs, profiling, or pattern activity -- and the evidence of discriminatory intent was limited to the plaintiff's allegations).

The Court also recognizes that "personal participation is an essential allegation in a [42 U.S.C.] § 1983 claim." Mitchell v. Maynard, 80 F.3d at 1441.  Because "liability under [42 U.S.C. §] 1983 must be predicated upon a 'deliberate deprivation of constitutional rights by a defendant,'" Gates v. Unified Sch. Dist. No. 449, 996 F.2d at 1043, a plaintiff must establish an affirmative link between the Defendants' conduct and the alleged constitutional violations of their subordinates by alleging the Defendants' direct participation, their exercise of control or direction, or their failure to supervise, see Serna v. Colo. Dep't of Corr., 455 F.3d at 1152.  While B.T. acknowledges that none of the Defendants sexually abused him, he alleges that each deliberately ignored the potential danger that Dominguez posed.  See B.T.'s Response at 15-16.

B.T.'s claims derive from the PLU's renewal of Dominguez' teaching license in 2000.

-19-

B.T.'s allegations specifically related to discriminatory animus, however, are limited to his assertion that Brown had a discriminatory motive and that Davis and Scargall condoned his discrimination. The Defendants have presented evidence that neither Davis nor Brown was involved in the processing of Dominguez' renewal application. See Brown Affidavit ¶¶ 18-19, at 4; Defendants' Reply, Exhibit AA, Affidavit of Michael J. Davis in Support of Defendants' Motion for Summary Judgment ¶ 7, at 2. B.T. has not presented evidence contradicting these assertions. B.T. has not presented evidence, beyond his own allegation that it was reasonable to infer that the Defendants knew Dominguez had submitted an allegation containing perjury, that any of the Defendants were involved in the review or the processing of the application.

Moreover, even assuming that Scargall was involved in the processing of Dominguez' renewal application, the Court has already decided that B.T. has not presented evidence - - direct or circumstantial -- to establish the discriminatory intent element necessary to assert a denial of equal protection. B.T. has failed to present even a scintilla of evidence of discriminatory intent, much less sufficient evidence to preclude summary judgment. Furthermore, even assuming that Scargall was intimately involved in Brown's investigation and the preparation of his report, the totality of her knowledge in June 2000 would have been that there was a seven-month investigation related to allegations against Dominguez, that the investigation had resulted in a conclusion that the evidence was insufficient to conclude that Dominguez molested students, and that Dominguez had not revealed the circumstances of his departure on his renewal application. Aware of the earlier, lengthy investigation and the difficulty proving the allegations against Dominguez, the Court cannot say that Scargall's decision not to require another investigation in 2000 was anything more than negligent. The Tenth Circuit has described it as "hornbook constitutional law that mere negligence

-20-

or mistake resulting in uneven application of the law is not an equal protection violation." Roe v. Keady, 329 F.3d at 1191-92. Absent any evidence that Scargall, or any other Defendant, renewed Dominguez' application, at least in part, to put boys in the Santa Fe schools in danger, the Court concludes that the Defendants' approval of Dominguez' application was no more than mere negligence and not an equal protection violation.

## II.   B.T. HAS NOT DEMONSTRATED THAT THE DEFENDANTS VIOLATED HIS RIGHT TO SUBSTANTIVE DUE PROCESS.

The Defendants emphasize that B.T. has not alleged that any of the Defendants directly injured him. See Defendants' Memorandum at 11. The Defendants suggest that, because, under the Supreme Court's holding in DeShaney v. Winnebago County Department of Social Services, state officials cannot be liable for acts of violence that third parties commit, the Defendants can be held liable, if at all, only if one of the two exceptions to DeShaney v. Winnebago County Department of Social Services -- the special relationship doctrine or the danger creation theory -- is applicable. See Defendants' Memorandum at 11-12.

B.T. counters that DeShaney v. Winnebago County Department of Social Services is inapplicable to his case. He contends that DeShaney v. Winnebago County Department of Social. Services relates to a State's duty to protect individuals from private violence and emphasizes that Dominguez was a public employee, not a private citizen, at the time he allegedly abused B.T. See B.T.'s Response at 18.

The Tenth Circuit has denied the applicability of DeShaney v. Winnebago County Department of Social Services in cases where the harm the plaintiff suffers is the result of a third party's action when that third party is a state actor. In Moore v. Guthrie, the plaintiff, a police officer, was injured when a bullet flew up beneath his riot helmet's face shield during a live fire

training exercise involving highly specialized training ammunition.  See 438 F.3d at 1038. The injured officer brought a substantive due process action against the police chief alleging that the chief's decision to have the officers wear riot helmets, rather than full face masks designed to be used with the training ammunition, during the training sessions was conscience-shocking conduct. See id. at 1040.  In affirming the district court's dismissal of the plaintiff's action for failure to state a claim, the Tenth Circuit considered both the special relationship doctrine and the danger creation theory, but reasoned that neither exception applies "when the injury occurs due to the action of another state actor."  Id. at 1042.   The Tenth Circuit concluded that, because the plaintiff was injured by a bullet that another police officer and not a private party shot, the exceptions to the general rule articulated in DeShaney v. Winnebago County Department of Social Services did not apply.

B.T. argues that, more important, DeShaney v. Winnebago County Department of Social Services does not apply because he is not suing the Defendants for the actions of a third party, but for their own actions.  See B.T.'s Response at 19.  B.T. cites Stoneking v. Bradford Area School District, 882 F.2d 720 (3d Cir. 1989), for the proposition that the Defendants' deliberate indifference to the danger Dominguez posed to his students is a direct violation of the Fourteenth Amendment. See B.T.'s Response at 19.  The plaintiff's complaint in Stoneking v. Bradford Area School District involved allegations that her high school band director had repeatedly sexually abused and harassed her during her time enrolled at Bradford High School.  See 882 F.2d at 722.  The plaintiff in Stoneking v. Bradford Area School District sued, among other defendants, the school's principal, assistant principal, and the district superintendent alleging that there was evidence from which a jury could conclude that the defendants were reckless in handling an incident of abuse that another

-22-

student had previously reported involving the band director, in their failure to investigate reports involving other female students, and in their attempts to rectify the problems involving the band director.  See id.  The plaintiff argued that the "defendants are liable because of their own actions in adopting and maintaining a practice, custom or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and in discouraging students' complaints about such conduct."  Id. at 724-25.

Similar to the Tenth Circuit in Moore v. Guthrie, the United States Court of Appeals for the Third Circuit in Stoneking v. Bradford Area School District acknowledged that "[t]he principal distinction between DeShaney's situation and that of Stoneking is that DeShaney's injuries resulted at the hands of a private actor, whereas Stoneking's resulted from the actions of a state employee."  Stoneking v. Bradford Area Sch. Dist., 882 F.2d at 724.  Moreover, because the plaintiff's allegations were based on the defendants' own actions, and not those of the band director, the Third Circuit explained that "[t]his is an independent basis for liability previously pled and preserved by Stoneking which is unrelated to the issue decided in DeShaney."  The Third Circuit concluded that, despite the Supreme Court's holding in DeShaney v. Winnebago County Department of Social Services, the plaintiff in Stoneking v. Bradford Area School District could maintain her action because "she has also alleged that defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused her constitutional harm."  882 F.2d at 725.

B.T. asserts that, consistent with the Third Circuit's analysis in Stoneking v. Bradford Area School District, "[t]he only question is whether the Defendants were, in fact, deliberately indifferent to Dominguez' conscience shocking acts."  B.T.'s Response at 19.  He asserts that "there exists a

dispute of material fact whether Defendants assisted Dominguez in his effort to cover up his abuse of young children in Tucumcari, by ordering that the veracity of Dominguez' obviously false statements on his renewal application could not be challenged." Id. at 20.  B.T. asserts that this conduct was tantamount to "granting him, in effect, a license to continue the abuse." Id.  The Court agrees with B.T. that, because Dominguez was a state actor,[4] the exceptions to the general rule articulated in DeShaney v. Winnebago County Department of Social Services do not apply, and therefore, if the Defendants are to be found liable, it must be for their own actions.  B.T. has not presented evidence, beyond his own allegations, that any of the Defendants assisted Dominguez in his effort to cover up his history of abusing young children or that they were deliberately indifferent to children's safety.  B.T. has suggested, without support, that the Defendants were aware of lies on Dominguez' renewal application.  Davis and Brown, on the other hand, have submitted affidavits indicating that they were not involved in the processing of renewal applications in June 2000.  The only evidence that B.T. has presented is limited to the fact that the Defendants were aware of the allegations against Dominguez involving students in Tucumcari and that they may have known he was teaching in Santa Fe.  B.T. has failed to present sufficient evidence to overcome a motion for summary judgment; at most, the record shows that the Defendants knew of allegations against

---

[4]The Court notes, however, that the Defendants and Dominguez are not at the same governmental level and do not have the same employer.  The Defendants clearly work for the State, but Dominguez worked for the Santa Fe Public Schools.  Compare Gonzales v. Mountainaire Pub. Sch., No. 93-2297, 1994 U.S. App. LEXIS 30457, at *8 (10th Cir. Oct. 31, 1994)(holding New Mexico school districts are "arms of the state" for purposes of Eleventh Amendment analysis), with N.M. ex rel. Stratton v. Roswell Indep. Sch., 111 N.M. 495, 498, 806 P.2d 1085, 1088 (Ct. App. 1991)(holding that public school teachers and administrators are not state employees within the meaning of N.M. Stat. Ann. §§ 2-1-3 to -4).  Thus, a sound argument could be made that Dominguez is more like a third party than the police officer in Moore v. Guthrie.  Nevertheless, even if DeShaney v. Winnebago County Department of Social Services is applicable, B.T.'s allegations do not come within either one of the exceptions the Supreme Court articulated in that case.

Dominguez, about Brown's investigation, and that Dominguez was working in Santa Fe.  The Court does not believe a reasonable jury could conclude from these facts that the Defendants acted with clear deliberate indifference, especially given the results of Brown's investigation and the conclusions in his report.

B.T. does not dispute that, subsequent to learning of allegations against Dominguez involving students in Tucumcari, the PLU initiated an investigation into the charges.  The investigation lasted from September 1998 through March 1999 and culminated in Brown's eleven-page, single-spaced report, which concluded that the evidence uncovered was not sufficient to revoke Dominguez' license.  B.T. may not be pleased with the results of that report, and may continue to feel that the extent of the investigation is inadequate, but that issue has already been foreclosed in this litigation.  It is enough to say that, when Dominguez began teaching at Salazar in the fall of 1999, he had already been the subject of an approximately seven-month investigation to determine whether he should retain his teaching license, the PLU had determined that evidence sufficient to justify revoking his license did not exist, and he was lawfully employed.  Even assuming that all the Defendants, including John Does I through V, knew these facts and were personally involved in the decision, the Court cannot say that evidence is sufficient to show deliberate indifference; at most, the Defendants' conduct was negligent.  With the possible exception that Dominguez omitted identifying the circumstances of his departure from Tucumcari in his renewal application, the Court cannot say that the case against renewing his license got stronger between the time the PLU decided not to revoke his license in March 1999 and the time when he submitted his renewal application in June 2000.

Although denying the applicability of the <u>DeShaney v. Winnebago County Department of</u>

Social Services exceptions, B.T. also contends that the Defendants can be held liable "pursuant to the 'danger creation' theory, because their reckless actions increased the danger to [B.T.]."  B.T.'s Response at 20.[5]  Without explaining how the danger creation theory applies in cases where the actor causing the harm is a state actor, B.T. cites to Armijo ex rel. Chavez v. Wagon Mound Public Schools for the elements of a claim based on the theory.  See B.T.'s Response at 20-21.  B.T. argues that, to prevail, he must demonstrate: (I) he was a member of a limited and specifically definable group; (ii) that the group was subject to a known risk of serious, immediate, and proximate harm; (iii) that the Defendants' conduct increased the risk; (iv) that the Defendants acted recklessly in conscious disregard of that risk; and (v) that such conduct, when viewed in total, is conscience shocking.  See id. (citing Armijo ex rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d at 1262-63).

In Armijo ex rel. Chavez v. Wagon Mound Public Schools, the Tenth Circuit evaluated the applicability of the DeShaney v. Winnebago County Department of Social Services exceptions in a case involving a special education student who committed suicide after the defendants, the school principal and school counselor, suspended the student and drove him to his home in response to threats of violence he had made against a teacher and another student.  See Armijo ex rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d at 1256-57.  The defendants in Armijo ex rel. Chavez v. Wagon Mound Public Schools considered the student to be at risk for committing violence and were

---

[5]B.T. does not, and cannot credibly, argue that the Court can hold the Defendants liable under the special relationship doctrine.  See Maldonado v. Josey, 975 F.2d 727, 731 (10th Cir. 1992)(holding compulsory attendance laws do not create a special relationship between the State and public-school students).  Accordingly, B.T. confines his argument to his assertion that "where state action is involved in actually causing the harm, the restraint on school children in school is sufficient to trigger substantive Due Process protections, not because of a 'special relationship,' but as an element of state action."  B.T.'s Response at 19 (citing Maldonado v. Josey, 975 F.2d at 731)(emphasis in original).

aware that the student had access to firearms at his home, but did not inform the student's parents about his removal from the school or check to ensure that his parents were at home before dropping the student off.  See id. at 1257.

Among other claims raised in Armijo ex rel. Chavez v. Wagon Mound Public Schools, the student's parents brought an action against the principal and the counselor under 42 U.S.C. § 1983 alleging that they violated the student's substantive due process rights.  See id.  In prefacing its analysis, the Tenth Circuit cited DeShaney v. Winnebago County Department of Social Services and stated that, "[g]enerally, state actors are liable only for their own acts, and not the violent acts of third parties," but noted the special relationship doctrine and the danger creation theory as exceptions to this general rule.  Armijo ex rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d at 1260. Specifically, the Tenth Circuit acknowledged that "State officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm."  Id. at 1262.

The Tenth Circuit in Armijo ex rel. Chavez v. Wagon Mound Public Schools explained that, to impose liability under the danger creation theory, in addition to the five elements that B.T. cites in his Response, a plaintiff must demonstrate affirmative action on the part of the State Defendants.

> [A] plaintiff must also show that the charged state entity and the charged individual defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way.  In other words, if the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed.

Armijo ex rel. Chavez v. Wagon Mound Pub. Sch., 159 F.3d at 1263. The Tenth Circuit emphasized that "the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's acts to occur."  Id. (quoting Johnson v. Dallas Ind. Sch.

Dist., 38 F.3d 198, 201 (5th Cir. 1994)).  The Tenth Circuit in <u>Armijo ex rel. Chavez v. Wagon Mound Public Schools</u> concluded that, based on the knowledge the defendants possessed concerning the plaintiff's emotional condition, his propensity for violence, and his access to firearms, a triable issue of fact existed regarding whether the defendants' affirmative acts increased the risk of danger to the plaintiff.

The Court believes that the facts of B.T.'s case are distinguishable from those of <u>Armijo ex rel. Chavez v. Wagon Mound Public Schools</u>.  First, at the time Dominguez submitted his application to have his teaching license renewed in June 2000, he had already been legitimately employed at Salazar since the fall of the previous year.  Accordingly, in renewing Dominguez' license, the Defendants could not have done more than to "put [B.T.] back in that same danger, [and] would not be liable because [they] could not have created a danger that already existed."  <u>Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.</u>, 159 F.3d at 1263.  Second, the undisputed facts in B.T.'s case are that the PLU had conducted an investigation into the earlier allegations of abuse against Dominguez and concluded that there was not enough evidence to justify revoking his teaching license.  While B.T. may disagree that the investigation conducted into the allegations involving students in Tucumcari was adequate, he does not dispute that Brown concluded the evidence was insufficient to revoke Dominguez' license.  Consequently, B.T. has not established that the environment the Defendants allegedly created was dangerous and they knew it to be so.  B.T. has not established a genuine issue of material fact regarding whether the Defendants increased the danger to him and other students in Dominguez' classes.

Finally, regardless whether the Court employs the exceptions articulated in <u>DeShaney v. Winnebago County Department of Social Services</u> or asserts direct liability on the Defendants for

their affirmative acts of deliberate indifference, the Court may "not relieve [B.T.] of his duty to allege actions that shock the conscience." Moore v. Guthrie, 438 F.3d at 1042. While B.T. has presented evidence that at least some of the Defendants had knowledge of the allegations against Dominguez, and that he was teaching at Salazar, he has not presented admissible evidence suggesting that, approximately fifteen months after the PLU concluded its investigation into the allegations, the Defendants, including John Does I through V, were aware that Dominguez submitted a deceptive application to have his teaching license renewed. Furthermore, even assuming that all the individuals involved in processing Dominguez' application were intimately involved in Brown's investigation and the preparation of his report, B.T. still has not established a violation of substantive due process. In June 2000, these individuals would have known that there was a seven-month investigation related to allegations against Dominguez, that the investigation had resulted in a conclusion that the evidence was insufficient to conclude that Dominguez molested students, and that Dominguez had not revealed the circumstances of his departure on his renewal application. They also would have been aware, however, that the PLU had not revoked Dominguez' license at the conclusion of its investigation and that he had been employed at Salazar for an entire school year without incident before submitting his renewal application. Aware of the earlier, lengthy investigation and the difficulty proving the allegations against Dominguez, the Court cannot say that, based on these facts, the Defendants' decision to renew Dominguez' license in 2000 shocks the conscience or is anything more than negligent.

In sum, B.T. does not dispute that, upon initially learning of the allegations against Dominguez, the Defendants initiated an investigation into the allegations to determine whether his license should be revoked or that the ultimate conclusion of that investigation was that the evidence

was not sufficient to revoke Dominguez' license.  Based on the record before it, the Court cannot say that there is a genuine issue of material fact regarding whether the Defendants acted with deliberate indifference to B.T. and that B.T. has met the high standard necessary to establish a violation of his substantive due process.

### III.   B.T. HAS NOT DEMONSTRATED THAT THE RIGHTS AT ISSUE WERE CLEARLY ESTABLISHED.

The Defendants argue that, even if the Court were to find that the Defendants' deliberate actions violated B.T.'s constitutional rights, B.T. cannot establish that those rights were clearly established as of the time that Dominguez' license was renewed in June 2000.  See Defendants' Memorandum at 20.  The Defendants contend that B.T. "can point to no clearly established case law in the Tenth Circuit or elsewhere that would make a state licensing official liable for injury inflicted by a state licensed third-party based on the theory that the license-related investigation of the third-party was recklessly deficient."  Id. at 21.  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation."  Saucier v. Katz, 533 U.S. at 202.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City and County of Denver, 960 F.2d at 1498.  B.T. concedes that there is no Tenth Circuit authority precisely on point to the facts of his case.  See B.T.'s Response at 16. He contends, however, that the law was sufficiently clear to put the Defendants on notice that their actions were unconstitutional.  See id.

Although B.T. "does not need to find a case with an identical factual situation, he still must show legal authority which makes it 'apparent' that 'in light of pre-existing law' a reasonable

official, in [the Defendants'] position," would have known his conduct was unconstitutional. Moore v. Guthrie, 438 F.3d at 1042 (quoting Albright v. Rodriguez, 51 F.3d 1531, 1534-35 (10th Cir. 1995). Consistent with this standard, the Defendants were obligated to "make a reasonable application of existing law to their own circumstances." SH.A ex rel. J.A. v. Tucumcari Mun. Sch., 321 F.3d 1285, 1288 (10th Cir. 2003)(quoting Johnson v. Martin, 195 F.3d 1208, 1216 (10th Cir. 1999)).

The Court agrees with B.T. that the law holding that sexual harassment is actionable as an equal protection violation was established by June 2000. See B.T.'s Response at 14. The Court also believes that, based on the significant amount of jurisprudence involving the application of the exceptions articulated in DeShaney v. Winnebago County Department of Social Services, and the theory of direct liability based on deliberate indifference, a reasonable official would have understood that deliberate disregard for a plaintiff's safety that created or increased a danger to which the plaintiff was subject was unconstitutional. Moreover, the Court does not believe that the fact that many of the cases that the parties cite involve direct supervisors, rather than licensing authorities, is a meaningful distinction in so far as a licensing authority has the power to remove a dangerous actor, or prevent him entrance, from a situation in which a plaintiff is vulnerable.

The Court also believes, however, that there are meaningful distinctions between the facts of B.T.'s case and the cases he relies on. Unlike the principal and assistant principal in Stoneking v. Bradford Area School District, the Defendants in this case did not have direct supervisory authority over Dominguez. Unlike the principal and assistant principal, when confronted with allegations of abuse, the Defendants actually initiated and completed an investigation into the charges. The Court also notes that the Third Circuit in Stoneking v. Bradford Area School District

reversed the district court's denial of summary judgment with respect to the plaintiff's claim against the district superintendent noting that it could not "discern from the record any affirmative acts . . . on which [the plaintiff] can base a claim of toleration, condonation or encouragement of sexual harassment by teachers which occurred in one of the various schools within his district." 882 F.2d at 731. Thus, even B.T.'s allegedly most similar case has significant distinctions.

In sum, considering all the evidence in the light most favorable to B.T., the Court is not persuaded that a reasonable official in the Defendants' positions would have known his action implicated any of these constitutional prohibitions. Assuming all the individuals involved in processing Dominguez' renewal applications were aware of the allegations against him, the Court does not believe that an official would have understood that renewing the application was unconstitutional when: (I) Dominguez currently held a valid license; (ii) the PLU had recently conducted an approximately seven-month-long investigation that resulted in insufficient evidence to revoke his license based on those same allegations; and (iii) the PLU had no supervisory authority or day-to-day control over his activities. Likewise, to the extent that B.T.'s claims are based on the PLU's policy that the veracity of an applicant's statements was to be accepted, the Court does not believe this rises above the level of negligence, a standard insufficient to establish a constitutional violation. Moreover, when this policy is viewed in the context of a statutory scheme that only required background checks for initial license applicants, the Court cannot say that clearly established law required more. See N.M. School Personnel Act, N.M. Stat. Ann. § 22-10A-5(B) (2003)(formerly codified at N.M. Stat. Ann. § 22-10-3.3).

The Court concludes that, when it views the evidence in the record and all reasonable inferences therefrom in the light most favorable to B.T., B.T. has not established that a reasonable

jury could find that the Defendants denied him equal protection or violated his right to substantive

due process.  Moreover, even if the Court assumes that the Defendants violated B.T.'s constitutional

rights, the Court does not believe that the law was clearly established to the extent that a reasonable

licensing official in the Defendants' position would have known that his actions were in violation

of B.T.'s rights.  Because B.T. has not established that his constitutional rights were violated, or that

the law related to the facts of his case is clearly established in his favor, the Court finds that the

Defendants are entitled to qualified immunity and will grant summary judgment on their behalf.

## IV.       THE COURT WILL DENY B.T.'S REQUEST FOR ADDITIONAL DISCOVERY.

In her affidavit, B.T.'s counsel indicates that, among other subjects, she needs to conduct

discovery to determine: (I) each of the Defendant's awareness of the allegations against Dominguez

and their familiarity with Brown's Memorandum summarizing his investigation, see Simmons

Affidavit ¶¶ 3, 5-8, at 1-2; (ii) the extent to which each of the Defendants was aware of, and

involved in, the processing of Dominguez' application for a renewed license, see id. ¶¶ 7-8, 11, at

2-3; (iii) the role each Defendant had in establishing and implementing the rule that the veracity of

applicants' statements would be accepted as stated, see id. ¶ 8, at 2; (iv) the identities of John Does

I through V, their knowledge of allegations against Dominguez, and the extent of their participation

in processing his renewal application, see id. ¶ 9, at 2; and (v) whether any of the Defendants have

historically treated allegations of sexual molestation against boys as less serious than those involving

female victims, see id. ¶ 14, at 3.  The Court must be mindful, however, that qualified immunity

"protects public officials not only from liability, but from the burdens of discovery and litigation as

well."  DiCesare v. Stuart, 12 F.3d at 979.  Once the qualified immunity defense has been raised,

the Court must not let a plaintiff use discovery as a fishing expedition to flesh out the merits of his

claim.  See Sawyer v. County of Creek, 908 F.2d 663, 668 (10th Cir. 1990)("A federal lawsuit is not

a fishing expedition."); Holguin v. City of Albuquerque, No. CIV 05-302 JB/RHS, 2006 U.S. Dist.

LEXIS 29489, at *20 (D.N.M. Mar. 1, 2006)(Browning, J.)("[I]t is insufficient for the party

opposing the motion to merely assert that additional discovery is required to demonstrate a factual

dispute or that evidence supporting a party's allegation is in the opposing party's hands.")(quoting

Lewis v. City of Ft. Collins, 903 F.2d 752, 758 (10th Cir. 1990)).

    While B.T.'s counsel's affidavit identifies a number of categories she would like to explore,

it does not identify for the Court what she expects to find, or "state with specificity how [additional

discovery] . . . would enable [B.T.] to meet [his] burden in opposing summary judgment."  Jensen

v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993); Schaefer v. Antill,

No. CIV 06-0460 JB/ACT, 2007 U.S. Dist. LEXIS 16853, *46 (D.N.M. Jan. 31, 2007)(Browning,

J.)(requiring a party requesting additional discovery under rule 56(f) to "specify particular

documents or testimony" it expected to uncover).  Nor does the Court believe that additional

discovery could change its result on this motion.  The Court has reached its conclusion assuming

that all of the Defendants involved in processing Dominguez' renewal application, including John

Does I through V, had full knowledge of the allegations against him involving the students in

Tucumcari, of Brown's report, and of Dominguez' deceptive application.

    Moreover, the Court has concluded that the law regarding B.T.'s claims was not clearly

established and that a reasonable person in the Defendants' position could have believed that their

actions were lawful.  The Tenth Circuit has described the resolution whether the law was clearly

established as a "threshold question" that must be satisfied before additional discovery should be

permitted.  Workman v. Jordan, 958 F.2d at 336. Under these circumstances, the Defendants are

entitled to dismissal.

**IT IS ORDERED** that Motion for Summary Judgment Based on Qualified Immunity is

granted.


_____
UNITED STATES DISTRICT JUDGE



*Counsel:*

Sylvia F. LaMar
Debra D. Poulin
Santa Fe, New Mexico

-- and --

Nancy L. Simmons
The Law Offices of Nancy L. Simmons, P.C.
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*


Stephen S. Hamilton
Emma R. Brittain
Holly Agajanian
Montgomery & Andrews, P.A.
Santa Fe,  New Mexico

> *Attorneys for Defendants New Mexico Public Education Department,*
> *Michael J. Davis; Willie Brown, and Marilyn Scargall*